UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANNETTE PICCOLI,

                              Plaintiff,

                                                                     08-CV-8344 (CS)

      - against -

                                                          **MEMORANDUM DECISION**

YONKERS BOARD OF EDUCATION and BERNARD       **AND ORDER**
PIERORAZIO, Superintendent of Schools,

                               Defendants.
-------------------------------------------------------------------x

Appearances:

Michael H. Sussman, Esq.
Goshen, New York
*Counsel for Plaintiff*

Vincent P. D'Andrea, Sr., Esq.
Lawrence W. Thomas, Esq.
Donoghue, Thomas, Auslander & Drohan
Scarsdale, New York
*Counsel for Defendants*

Seibel, J.

       On September 29, 2008, Plaintiff Annette Piccoli filed this action pursuant to 42 U.S.C. § 1983 against Defendants Yonkers Board of Education (the "Board") and Superintendent Bernard Pierarzio, alleging violations of her rights under the Fourteenth Amendment to the United States Constitution.  Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 10.)  For the reasons stated herein, Defendants' Motion is granted, with leave to replead.

I. Background

    A. Facts

For purposes of deciding this Motion, the Court assumes the facts as alleged in the Complaint to be true and draws all inferences in Plaintiff's favor.  Plaintiff was employed as a probationary teacher in the Yonkers School District until her employment was terminated effective February 15, 2008.  (Compl. ¶ 6.)  Plaintiff's employment was terminated by the Board at the recommendation of Superintendent Pierarzio based on a claim that "she had allegedly failed to follow district policy with respect to the dismissal of a student entrusted to her care and custody on December 10, 2007."  (*Id*. ¶ 7.)  On that date, Plaintiff had dismissed a student to the care and custody of an adult who came to pick the child up, after confirming with the child that the adult was there to pick her up from school (the "dismissal incident").  (*Id*. ¶¶ 7-8.)  According to Plaintiff, this dismissal conformed with the policy of the school at which Plaintiff was employed – a policy which was set and confirmed by the school principal.  (*Id*. ¶¶ 10-11, 14.)

On the day after the dismissal incident, Plaintiff and the principal of her school were required to report to the office of a central administrator, to whom the principal explained that Plaintiff had acted in accordance with the principal's policy for the dismissal of students.  (*Id*. ¶¶ 13-14.)  The principal was sent back to work because she was tenured, and she was never sanctioned for establishing the dismissal policy at issue.  (*Id*. ¶¶ 13, 15.)  Plaintiff, however, was made to be a "public scapegoat," "though she had fully complied with the policy of her superordinate and no harm came to the dismissed child."  (*Id*. ¶ 16.)  Plaintiff alleges that Pierarzio ignored the fact that Plaintiff's action complied with school building policy and

"terminated plaintiff in an effort to deceive the public into believing that [P]laintiff had made an error." (*Id*. ¶ 17.) According to Plaintiff, Defendant Pierarzio and other central office administrators made stigmatizing, false and adverse public statements about her in connection with her termination. (*Id*. ¶ 21.) Plaintiff, who was six months away from tenure eligibility at the time she was terminated, alleges that her stellar record as a teacher guaranteed that she would have gained tenure but for Defendants' baseless termination. (*Id*. ¶¶ 18-19.)

As a result of her termination and the public statements made in connection with it, Plaintiff claims to have suffered pecuniary and non-pecuniary harm, an inability to find comparable employment, humiliation, and a loss of professional standing. (*Id*. ¶¶ 20-22.)

B. Procedural History

Plaintiff filed this Section 1983 action on September 29, 2008, alleging that her substantive and procedural due process rights were violated by Defendants in connection with her termination and the public statements made about the termination. On July 2, 2009, Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff has not alleged the existence of a protected property right or liberty interest, and that Plaintiff had adequate remedies under state and local law.[1]

---

[1] Plaintiff concedes that, as a probationary employee, she had no property interest in her continued employment. (Pl.'s Opp'n 5.)

II. Discussion

      A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 129 S. Ct. at 1950.

In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

B. Analysis

1. Procedural Due Process

In her procedural due process claim, Plaintiff alleges that Defendants deprived her of her liberty interest in her "good name" by making defamatory statements in connection with her termination from employment without providing her with a name-clearing hearing.

A government actor may not deprive individuals "of interests encompassed by the Fourteenth Amendment's protection of liberty and property" without due process of law. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Where someone's "good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

In order to adequately allege a liberty interest claim based on damage to her reputation, Plaintiff must allege that the "information was stigmatizing, false, and publicized by the state actor." *Kelly Kare Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir. 1991). But "defamation alone does not raise a due process claim." *Id.* at 177 n.3; *accord White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1062 (2d Cir. 1993) (injury to reputation alone, even when inflicted by state official, does not deprive individual of liberty interest). The alleged damage to reputation must be coupled with the loss of some tangible interest. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006); *see O'Neill v. City of Auburn*, 23 F.3d 685, 691 n.2 (2d Cir. 1994) ("simple damage to reputation does not give rise to a liberty interest claim; rather, the

damage must be accompanied by some significant deprivation, such as dismissal from government employment").

A "stigma-plus" claim, which Plaintiff here has alleged, "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (internal quotation marks omitted).  It is well settled that where, as in the present case, the alleged defamation is coupled with termination of government employment, the "plus" is satisfied.  *See id.*  Therefore, Plaintiff has adequately alleged the "plus" aspect of her stigma-plus claim.

Where the alleged stigmatizing statements are made in connection with termination from government employment, in order to satisfy the "stigma" aspect of a stigma-plus claim, a plaintiff must allege the following elements:  (1) the government made "stigmatizing statements about [plaintiff] – statements that call into question [the] plaintiff's good name, reputation, honor, or integrity"; (2) the stigmatizing statements were publicly made; and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Segal*, 459 F.3d at 212 (internal quotation marks omitted).  Plaintiff is also required to raise the falsity of the statements as an issue.  *Id.* at 212 n.5; *see S & D Maint. Co. v. Goldin*, 844 F.2d 962, 971 (2d Cir. 1988) ("employee must allege that the charges are false" (internal quotation marks omitted)).

With respect to the first element, to qualify as sufficiently stigmatizing so as to implicate a liberty interest, the statements "must be so damaging to [plaintiff's] reputation that they seriously would hinder the employee in finding work in that field." *Empire Transit Mix, Inc. v.*

*Giuliani*, 37 F. Supp. 2d 331, 337 (S.D.N.Y. 1999); *accord Segal*, 459 F.3d at 212 ("statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession will satisfy the stigma requirement" (internal quotation marks omitted)).  This requires "something considerably graver than a charge of failure to perform a particular job, *lying within the employee's power to correct*."  *O'Neill*, 23 F.3d at 692 (internal quotation marks omitted) (emphasis in original).  Statements of professional incompetence – as opposed to statements of failure to perform in a given instance – are generally found to be "something graver" due to the higher likelihood that they could result in disqualification from future employment.  *See id.*; *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) ("[A] government announcement that it has fired an employee for incompetence or because she can no longer do the job is considerably graver and carries more potential for future disqualification from employment than a statement that the individual performed a job poorly." (internal quotation marks omitted)).  "A prospective subsequent employer . . . is far more likely to hire one who has chosen to perform below par in a particular prior engagement than one who was incapable of doing the job."  *O'Neill*, 23 F.3d at 692.  Indeed, an employee's unwillingness or failure "to perform professional duties properly in a particular [situation] could result from innumerable factors that would not be replicated in a subsequent . . . setting," and thus is not sufficiently stigmatizing to support a stigma-plus claim.  *Id.*  Nor is it sufficient that termination itself may make Plaintiff less desirable to other employers, absent "derogatory statements . . . so damaging to . . . professional reputation that they seriously would hinder [Plaintiff] in finding work in [her] field."  *Empire*

*Transit Mix*, 37 F. Supp. 2d at 337; *accord Bd. of Regents*, 408 U.S. at 574 n.13 ("Mere proof . . . that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'").

The Court finds that Plaintiff has not adequately alleged the "stigma" aspect of the first element of her "stigma-plus" claim.  First of all, although the Complaint is unclear on the matter, Plaintiff admits in opposition to this Motion that she was apparently not even identified by name in the alleged public statements made.  (Pl.'s Opp'n 7 n.3 ("[T]he school district chastises the unnamed teacher for failing to follow[] district policy and showing poor judgment in dismissing the child.").)  Second, Plaintiff does not provide factual allegations to render plausible her claim that the statements were stigmatizing in that they called into question her good name and integrity or seriously hindered her ability to find work in her field.   In fact, Plaintiff does not even allege what these allegedly stigmatizing statements were, other than to allege generally that Defendants told the public that district policy was violated, (Compl. ¶ 12), and that the public was led to believe that the teacher erred when in fact she had followed building (though not District) policy, (*id.* ¶ 17).[2]  Even assuming that the public knew that Plaintiff was the teacher involved here, such allegations – amounting at most to an allegation of poor judgment in a single instance – are simply not stigmatizing enough to implicate a liberty interest, nor do they suggest the kind of professional incompetence or inability required to state a claim.  A statement that Plaintiff failed to perform satisfactorily in a given situation does not, by itself, raise the

---

[2] The Court assumes for purposes of this Motion the veracity of Plaintiff's claim that she acted in accordance with her principal's policy, which apparently was not in accord with District policy.

statements to the level of a constitutional violation. *See O'Neill*, 23 F.3d at 692. Further, merely conclusory allegations that Plaintiff was stigmatized, (Compl. ¶ 24), that her reputation was substantially damaged, (*id*.), and that she lost professional standing (*id*. ¶ 21), are insufficient without factual support to allege a plausible stigma-plus claim, *see Srinivas v. Picard*, No. 08-CV-1534, 2009 U.S. Dist. LEXIS 78464, at *26 (D. Conn. Aug. 26, 2009) (plaintiff's conclusory allegation that her reputation had been damaged and that defendants' action destroyed her career insufficient because "[n]owhere does she allege facts that could show she has been prevented from pursuing her career because of stigmatizing statements made by any of the defendants"), especially where it is not even clear whether the public or prospective employers knew or could know that Plaintiff was the subject of the alleged statements. Thus, because the Court finds that Plaintiff has failed to sufficiently allege the first element of her stigma-plus claim, Plaintiff's procedural due process claim is dismissed for failure to state a claim.

      Defendants also argue that, even if Plaintiff's allegations were sufficient to implicate a liberty interest, Plaintiff's procedural due process claim fails because Plaintiff had adequate due process remedies under state and local law. It is well-settled that "'the availability of adequate process defeats a stigma-plus claim.'" *Cates v. Williams*, 08-CV-1529, 2009 U.S. Dist. LEXIS 23478, at *22 (S.D.N.Y. Mar. 18, 2009) (quoting *Segal*, 459 F.3d at 213). While Plaintiff has alleged that "[n]o state court remedy adequately affords [her] relief from these damages," (Compl. ¶ 25), this conclusory allegation is insufficient to establish that Plaintiff was deprived of a liberty interest without due process, especially where the case law in this Circuit suggests the opposite.

"[I]n [a] case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." *Segal*, 459 F.3d at 214; *accord Cates*, 2009 U.S. Dist. LEXIS 23478, at *23.  Because an at-will employee has no property interest in his or her continued employment, a pre-termination name-clearing hearing is not required to satisfy due process.  *See Walsh v. Suffolk County Police Dep't*, No. 06-CV-2237, 2008 U.S. Dist. LEXIS 36465, at *45 (E.D.N.Y. May 5, 2008), *aff'd on other grounds*, 2009 U.S. App. LEXIS 14292 (2d Cir. July 1, 2009).

"New York provides for such a name-clearing hearing pursuant to CPLR Article 78, which allows a dismissed municipal employee an avenue for challenging his termination as arbitrary and capricious and contrary to law." *Id*. at *46. "Article 78 proceedings have been held to be adequate post-deprivation procedures and they frequently function as name-clearing hearings." *Id*. at *47; *accord Felton v. Katonah Lewisboro Sch. Dist.*, No. 08-CV-9340, 2009 U.S. Dist. LEXIS 64660, at *19 (S.D.N.Y. July 27, 2009) (stigma-plus claim dismissed because "[p]laintiffs could have availed themselves of adequate post-deprivation [Article 78] remedies but failed to do so"); *Spang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009) ("courts have consistently held that Article 78 proceedings provide sufficient procedural protection as post-deprivation name-clearing hearings"); *Anemone v. Metro. Transp. Auth.*, No. 05-CV-3170, 2008 U.S. Dist. LEXIS 36091, at *47 (S.D.N.Y. May 2, 2008) (stigma-plus claim dismissed because "the availability of an Article 78 proceeding under New York law constitutes adequate post-deprivation process"); *Rivera v. Cmty. Sch. Dist. Nine*, No. 00-CV-8208, 2002 U.S. Dist. LEXIS 12185, at *20 (S.D.N.Y. July 1, 2002) (plaintiff "did not suffer a deprivation of her due process rights because she could have requested a

name-clearing hearing through a proceeding pursuant to Article 78"). Plaintiff's due process claim cannot stand where she failed to take advantage of the availability of an Article 78 proceeding to clear her name. This is true even though the four-month statute of limitations to commence an Article 78 proceeding has run and even though Plaintiff would not be able to recover the same types of relief as are available in a Section 1983 action. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996). The availability of due process in the form of an Article 78 proceeding means that there was simply no denial of due process to be pursued in this Court under Section 1983. *Id.* at 882.

Because there are no non-conclusory allegations in the Complaint suggesting that an Article 78 proceeding was either unavailable to Plaintiff or somehow insufficient to clear her name, the procedural due process claim is also dismissed on this alternative basis.[3]

### 2. Substantive Due Process

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Plaintiff has alleged a violation of her substantive due process rights based on Defendants' allegedly arbitrary, capricious and conscious-shocking conduct in making Plaintiff, a non-tenured employee, the "public scapegoat," (Compl. ¶ 16), in connection with the dismissal incident even though she had

---

[3] Defendants also argue that the ability of Plaintiff to contest the termination recommendation and to request a hearing prior to her termination provided adequate due process to defeat Plaintiff's stigma-plus claim. (Defs.' Mem. 10.) The Court does not reach this argument because it finds that the availability of a Article 78 proceeding provided an adequate post-deprivation remedy to defeat Plaintiff's claim.

followed school policy, while subjecting the actual creator of the problematic school policy – the principal, a tenured employee – to no consequences whatsoever.  While this outcome may seem inequitable based on the allegations in the Complaint, whether it rises to the level of a plausible constitutional violation is a different question.

Plaintiff does not have a substantive due process claim based on the mere fact that she has alleged Defendants' actions to be conscience-shocking.  Instead, in order to state a claim under Section 1983, the allegedly conscience-shocking conduct must have operated to deprive Plaintiff of some constitutionally-protected interest.  *See Singleton v. Cecil*, 155 F.3d 983, 989 (8th Cir. 1998) ("Certainly it is true that no due-process violation, whether procedural or substantive, can occur unless someone has been deprived of life, liberty, or property.").  Therefore, the first issue for the Court is to identify the constitutionally-protected interest at stake.  *See O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) ("To determine whether [defendant] violated [plaintiff's] constitutional rights . . . we first identify the right at stake."); *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("The first step in substantive due process analysis is to identify the constitutional right at stake.").

Plaintiff does not explicitly identify the constitutional interest at stake in her substantive due process claim.  Plaintiff alleges that, through Defendants' "arbitrary, capricious and conscience shocking behavior," Plaintiff, without any due process, was stigmatized and her professional reputation was substantially damaged in connection with her baseless termination.  (Compl. ¶ 24.)  Thus, it seems as though her procedural and substantive due process claims overlap significantly.  Whether couched as Defendants improperly impairing Plaintiff's good name or Defendants improperly (and conscience-shockingly) making Plaintiff, as opposed to the

principal, the "public scapegoat," the constitutionally-protected interest allegedly at stake in both due process claims – Plaintiff's liberty interest in her good name and reputation – appears to be the same.[4]  For the reasons already discussed, however, the allegations in the Complaint fall short of implicating a liberty interest.[5]  Accordingly, Plaintiff's substantive due process claim is also dismissed.

---

[4] If Plaintiff, in connection with her substantive due process claim, intends to advance an interest different from that which has been identified by the Court, that intent cannot be discerned from the Complaint.  Further, to the extent the Complaint alleges that a property interest is at stake, Plaintiff has since conceded that, as a probationary employee, she had no constitutionally-protected property interest in her employment.  (Pl.'s Opp'n 5.)

[5] At this point, because of the lack of clarity in the Complaint, it is unclear to the Court whether a substantive due process claim would be appropriate here at all, given the apparent extent to which it overlaps with Plaintiff's procedural due process claim.  *See Velez*, 401 F.3d at 94 ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."); *see also Tafuto v. New York State Office for Children & Family Servs.*, No. 08-CV-8433, 2009 U.S. Dist. LEXIS 105426, at *14-15 (S.D.N.Y. Nov. 6, 2009) ("Drawing all reasonable inferences in Plaintiff's favor, the Complaint appears to allege that the disclosure of the allegations and adverse determinations to her clients and licensing authority violated her substantive due process right to privacy.  This is nothing more than a restatement of the stigma plus due process claim, and falls within the Supreme Court's instruction that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks omitted)).

III. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted and the Complaint is dismissed without prejudice. Plaintiff has leave to file an amended complaint by no later than January 8, 2010, provided that she has a good faith basis for doing so. Plaintiff's failure to file an amended complaint by that date will result in a dismissal with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion (Doc. 10).

**SO ORDERED.**

Dated: December 11, 2009
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.